AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>4560 Wayne Meadows Circle, Huber Heights, Ohio 45424 | Case No. 1:20-mj-469 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the     Southern     District of     Ohio     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Possession with Intent to Distribute and Distribute Cocaine |
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute Cocaine |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Tyler D. Field, Special Agent DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
FaceTime Video Conference    *(specify reliable electronic means)*.

Date: 6/29/2020

*Judge's signature*

City and state: Cincinnati, Ohio     Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## 4560 Wayne Meadows Circle, Huber Heights, Ohio 45424

4560 Wayne Meadows Circle is a unit in one story, multi-unit building. The building has red brick siding with white trim around the windows. The entrance to 4560 Wayne Meadows Circle faces north. The number "4560" is visible to the right of the entrance.



# **ATTACHMENT B**

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k. Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l. Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

m. Controlled substances, including, but not limited to cocaine.

n. Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to cocaine, and any other supplies related to the manufacture and distribution of said controlled substances.

o. United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p. Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence

**Page 2**

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Tyler D. Field, Special Agent with the Drug Enforcement Administration, being first duly sworn, hereby state:

1. This affidavit is submitted in support of an application for search warrants for evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute cocaine.

2. For all the reasons outlined in this affidavit, I have probable cause to believe that evidence related to these crimes will be located within the following **Subject Locations**, which are more fully described in **Attachment A** (attached hereto and incorporated herein by reference):

    a. 4560 Wayne Meadows Circle, Huber Heights, Ohio

    b. 109 Melwood Avenue, Dayton, Ohio

3. This affidavit is submitted in support of an application for a warrant to search the above listed **Subject Locations** more fully described in **Attachment A** for evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), as more particularly described in **Attachment B** (incorporated herein by reference). This affidavit is for the limited purposes of demonstrating probable cause. Therefore, I have not set forth each and every fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause. The facts reported in this affidavit are based on my own knowledge, the knowledge of other law enforcement officers/agents involved in the investigation and the use of Confidential Sources/Sources of Information.

**Affidavit of Special Agent Tyler Field** **Page 1**

**TRAINING AND EXPERIENCE**

4.      I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in the Indiana Army National Guard and have done so for over eighteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I have graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code.  As a DEA agent, I have participated in approximately twenty criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

5.      I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

**Affidavit of Special Agent Tyler Field**                                                                                           **Page 2**

**SUMMARY OF INVESTIGATION**

6. On February 7, 2017, Luxury Sports Auto Sales, located at 5360 W. 3rd Street, Dayton, Ohio, was incorporated with David SCOTT listed as the statutory agent and manager and Jerry VAUGHN listed as the treasurer.

7. On December 28, 2017, SCOTT activated utilities for 109 Melwood Avenue, listing his contact telephone number as 937-608-5916 and his place of employment as Luxury Sports Auto Sales.

8. On December 14, 2019 at approximately 2:20 p.m., Shannon HIGGINS' Ford Taurus with Ohio License plates HXR3481 (HIGGINS' vehicle) departed the area of 1575 Mandarin Drive, Cincinnati, Ohio (HIGGINS' residence), according to the court-authorized GPS tracking device installed on HIGGINS' vehicle. HIGGINS' vehicle travelled directly to the area of Luxury Sports Auto Sales according to the GPS tracking device, arriving at approximately 3:11 p.m. Officers/agents observed, via a camera, HIGGINS' vehicle park at Luxury Sports Auto Sales. Officers/agents observed the driver of a Nisan Maxima, later identified as SCOTT, exit the Nissan and enter the front passenger seat of HIGGINS' vehicle. At approximately 3:17 p.m., officers/agents observed HIGGINS exit HIGGINS' vehicle and enter the driver's seat of the Nissan and SCOTT enter the front passenger seat of the Nissan.

9. At approximately 3:38 p.m., officers/agents observed a red Buick sedan arrive at Luxury Sports Auto sales being driven by VAUGHN. Immediately upon the arrival of VAUGHN's Buick, both HIGGINS and SCOTT exited the Nissan and walked to VAUGHN's Buick. HIGGINS entered the front passenger seat of VAUGHN's Buick, while SCOTT stood next to the car. At approximately 3:41 p.m., HIGGINS exited VAUGHN's Buick, entered the driver's seat of HIGGINS' vehicle, and departed the area. Based on my training and experience, I am aware that

**Affidavit of Special Agent Tyler Field**                                                                                              **Page 3**

meetings between drug traffickers to either distribute controlled substances or discuss the future distribution of controlled substances are often very brief. Consequently, I believe that HIGGINS, VAUGHN, and SCOTT engaged in a drug transaction.

10. On December 18, 2019, there were approximately four communications between HIGGINS, using telephone number 513-319-4418, and SCOTT, using telephone number 937-608-5916. Based on my training, experience, discussions with other law enforcement officers/agents, and my belief that SCOTT, HIGGINS, and VAUGHN engaged in a drug transaction on December 14, 2019, I believe that the communications between HIGGINS and SCOTT, using telephone number 937-608-5916, were in furtherance of their drug trafficking conspiracy.

11. On January 27, 2020 at approximately 1:03 p.m., HIGGINS departed the area of HIGGINS' residence according to the GPS tracking device. HIGGINS' vehicle travelled directly to Luxury Sports Auto Sales, arriving at approximately 1:57 p.m. Officers/agents observed, via a camera, HIGGINS' vehicle park in the parking lot of Luxury Sports Auto Sales.

12. At approximately 1:53 p.m., VAUGHN's Buick departed the area of VAUGHN's residence located at 609 N. Eppington Drive, Dayton, Ohio according to a court-authorized GPS tracking device installed on VAUGHN's Buick. VAUGHN's Buick travelled directly to Luxury Sports Auto Sales, arriving at approximately 2:03 p.m. Officers/agents observed VAUGHN exit the driver's door of VAUGHN's Buick with his left hand in his left pocket and enter the front passenger door of HIGGINS' vehicle. Approximately one minute later, VAUGHN exited the front passenger door of HIGGINS' vehicle and entered the driver's seat of VAUGHN's Buick. This activity was consistent with the meeting between HIGGINS and VAUGHN on December 14, 2019. Based on my training and experience, I am aware that meetings between drug traffickers to distribute controlled substances are often brief.

**Affidavit of Special Agent Tyler Field** **Page 4**

13. At approximately 2:04 p.m., HIGGINS departed Luxury Sports Auto Sales. HIGGINS's vehicle travelled directly to I-75 south travelling towards Cincinnati.

14. Following HIGGINS' departure, VAUGHN remained inside of VAUGHN's Buick. At approximately 2:24 p.m., VAUGHN's Buick departed Luxury Sports Auto Sales and was followed by surveillance.

15. At approximately 2:36 p.m., Ohio State Highway Patrol (OSHP) troopers operating marked OSHP vehicles conducted a traffic stop on HIGGINS' vehicle on I-75 south north of state route 129. The troopers detained HIGGINS and directed him to the rear of one of their marked vehicles. TFO David Theobald then directed his canine partner "Jaki" to conduct an open air sniff of HIGGINS' vehicle and "Jaki" alerted to the right front tire on the downside of the vehicle. TFO Theobald and his canine "Jaki" are a currently certified narcotics team. The team is certified by the Ohio Peace Officer Training Commission and the Office of the Attorney General (Ohio). TFO Theobald reports that "Jaki" passed all of his examinations and has successfully located hidden drugs in the past and therefore your Affiant considers "Jaki" to be reliable. Troopers subsequently searched the vehicle and located a black plastic underneath the front passenger seat. Inside the black plastic bag troopers observed two clear plastic bags containing approximately 487.9 grams of cocaine. HIGGINS was then placed under arrested and transported to the Cincinnati Police Department for processing. Officers/agents also seized HIGGINS' telephone.

16. At approximately 3:03 p.m., Trotwood Police officers stopped VAUGHN's vehicle. Officers took VAUGHN in custody and transported him to the Trotwood Police Department. During a search of VAUGHN's vehicle, officers/agents located $15,502 in United States currency which I believe to be drug proceeds that VAUGHN obtained from HIGGINS.

17. At approximately 4:32 p.m., officers/agents executed a search warrant at Luxury Sports Auto Sales and seized a large metal cylinder that required a forklift to be moved due to its size and weight. Officers/agents later learned that the metal cylinder contained approximately 79 kilograms of cocaine. During the search of Luxury Sports Auto Sales officers/agents also observed a forklift which was rented by SCOTT from Miami Industrial Trucks. When renting the forklift, SCOTT used telephone number 937-608-5916. Based on my training, experience, and my knowledge that the metal cylinder was very heavy, I believe that SCOTT rented the forklift using telephone number 937-608-5916 to move the metal cylinder containing cocaine.

18. In 2020, a cooperating defendant (the CD[1]) stated that during 2019 he/she obtained controlled substances from SCOTT and/or delivered drug proceeds to SCOTT at a brown single-family house off of W. Third Street, Dayton, Ohio. The CD said the house was located behind a Shell Gas Station and had a black screen door and no garage. 109 Melwood Avenue is a brown single family house with no garage and a black security door. Melwood Avenue is located off of W. Third Street and there is a Shell gas station located near the intersection of Melwood Avenue and W. Third Street. Based on my knowledge that SCOTT maintains utilities at 109 Melwood Avenue and my knowledge that the CD's description of the stash location used by SCOTT is consistent with 109 Melwood Avenue, I believe that the CD was describing 109 Melwood Avenue.

19. On February 6, 2020, VAUGHN and HIGGINS were indictment by a grand jury in the Southern District of Ohio and charged distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and a narcotics conspiracy in violation of 21 U.S.C. § 846.

---

[1] The CD has a criminal history that includes convictions for drug trafficking and is cooperating for consideration on pending drug charges. Investigators were able to corroborate information provided by the CD and believe the CD to be reliable.

**Affidavit of Special Agent Tyler Field**　　　　　　　　　　　　　　　　　　　　　　　　**Page 6**

20. On June 17, 2020, a federal grand jury in the Southern District of Ohio indicted SCOTT and VAUGHN with a narcotics conspiracy from November 27 , 2019 to January 27, 2020 in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). VAUGHN was also charged with distribute of cocaine in violation of 21 U.S.C. § 841(a)(1).

21. On June 18, 2020, the Honorable Karen L. Litkovitz, United States Magistrate Judge in the Southern District of Ohio, signed a search warrant authorizing the acquisition of location information concerning SCOTT's telephone number 937-608-5916. According to subscriber records, the billing address for SCOTT's telephone number 937-608-5916 is 109 Melwood Avenue.

22. Since June 18, 2020, SCOTT's telephone 937-608-5916 has been located in the area of 4560 Wayne Meadows Circle each night.

23. According to call records, between December 2019 and June 2020, the second most frequent contact of SCOTT's telephone number 937-608-5916 was telephone number 937-672-0939. According to subscriber records, telephone number 937-672-0939 is subscribed to Dashia Taylor. According to utility records, Taylor maintains utilities at 4560 Wayne Meadows Circle using telephone number 937-672-0939.

24. On June 22, 2020, at approximately, 8:57 a.m., location information indicated that SCOTT's telephone number 937-608-5916 was located within approximately 79 meters of the area of 4657 Wayne Meadows Circle. 4657 Wayne Meadows Circle is located in close proximity to 4560 Wayne Meadows Circle.

25. At approximately 10:05 a.m., I observed SCOTT walk away from the front door of 4560 Wayne Meadows Circle and enter the front driver's door of a gray 2013 Nissan SUV with Ohio

**Affidavit of Special Agent Tyler Field** **Page 7**

license plate FZK3885 and VIN: 5N1AR2MM2DC629326, which was parked in the parking lot directly in front of 4560 Wayne Meadows Circle. According to the Ohio Bureau of Motor Vehicles, Ohio license plate FZK3885 is registered to Taylor at 4560 Wayne Meadows Circle. SCOTT remained in the Nissan from approximately two minutes and then departed the area and was not followed by surveillance. SCOTT was the only occupant of the Nissan.

26. At approximately 10:40 a.m., I established surveillance in the area of 109 Melwood Avenue. At approximately 10:49 a.m., I observed the Nissan turn onto Melwood Avenue and park in the driveway of 109 Melwood Avenue. At approximately 10:52 a.m., agents observed the Nissan exit the driveway and turn onto Melwood Avenue. Based on my training and experience, I am aware the drug traffickers often make brief visits to stash locations to obtain controlled substances and deliver/retrieve drug proceeds.

27. Agents maintained surveillance on the Nissan as it travelled west on W. Third Street. The Nissan was initially traveling at the speed limit (45 mph) but then slowed down to approximately 30 mph. As a result, surveillance agents were forced to drive by the Nissan and briefly terminate surveillance. Based on my training and experience, I am aware that a common counter-surveillance technique employed by drug traffickers is to drive slower than the speed limit to either force law enforcement to pass the drug trafficker's vehicle or risk being identified as law enforcement by the drug trafficker.

28. At approximately 11:15 a.m., agents once again observed the Nissan park in the driveway of 109 Melwood Avenue. Agents observed SCOTT exit the driver's door of the Nissan and walk up the driveway. At this time, agents terminated surveillance.

29. On June 29, 2020, officers/agents again established surveillance in the area of 109 Melwood Avenue. At approximately 11:06 a.m., officers/agents observed SCOTT exit the front

**Affidavit of Special Agent Tyler Field** **Page 8**

passenger seat of a black GMC pick-up truck that was parked in the driveway of 109 Melwood Avenue. SCOTT appeared to place something in another pick-up truck parked in the driveway and then opened the front doors of 109 Melwood Avenue using a key. My observations of SCOTT at 109 Melwood Avenue corroborates CD's statements that the CD had obtained controlled substances from SCOTT and/or delivered drug proceeds to SCOTT in the past at a residence matching the location and description of 109 Melwood Avenue. Based on my training and experience, as well as my observations on June 22, 2020 and June 29, 2020, I believe SCOTT continues to use 109 Melwood Avenue as a stash location for his drug trafficking activities.

30. Based on my training, experience, discussions with other law enforcement officers/agents; my knowledge that SCOTT maintains utilities at 109 Melwood Avenue; my knowledge that SCOTT listed telephone number 937-608-5916 and his employment at Luxury Sports Auto Sales when activating utilities at 109 Melwood Avenue; my belief that SCOTT engaged in a drug transaction with HIGGINS and VAUGHN at Luxury Sports Auto Sales; my belief that SCOTT subsequently used telephone number 937-608-5916 to communicate with HIGGINS in furtherance of their drug trafficking conspiracy; my belief that SCOTT, using telephone number 937-608-5916, rented a forklift to move the metal cylinder containing a large amount of cocaine; my knowledge that the billing address for SCOTT's telephone number 937-608-5916 is 109 Melwood Avenue; my knowledge that the CD described 109 Melwood Avenue as a stash location used by SCOTT; my observations of SCOTT travelling to 109 Melwood Avenue on June 22, 2020; my knowledge that the brief duration of SCOTT's visit to 109 Melwood Avenue and SCOTT's driving behavior upon leaving 109 Melwood Avenue is consistent with behavior commonly exhibited by drug traffickers, and officers/agents' observations of SCOTT entering 109 Melwood Avenue on June 29, 2020 using a key, I believe that SCOTT uses 109 Melwood Avenue as a stash location. I

**Affidavit of Special Agent Tyler Field** **Page 9**

further believe that evidence of SCOTT's drug trafficking activities will be found at 109 Melwood Avenue.

31. Based on my training, experience, discussions with other law enforcement officers/agents; my knowledge that Taylor's telephone number 937-672-0939 is the second most frequent contact of SCOTT's telephone number 937-608-5916; my knowledge that Taylor maintains utilities at 4560 Wayne Meadows Circle; my knowledge that SCOTT's telephone number 937-608-5916 has been located in the area of 4560 Wayne Meadows Circle each night since I began obtaining location information for SCOTT's telephone number 937-608-5916; my observations of SCOTT walking away from the front door of 4560 Wayne Meadows Circle on June 22, 2020 and getting into the driver's door of the Nissan; and my knowledge that the Nissan is registered to Taylor at 4560 Wayne Meadows Circle, I believe that SCOTT is primarily residing at 4560 Wayne Meadows Circle. Based on my training and experience, I know that drug traffickers often store controlled substances, drug proceeds, weapons, and fruits and instrumentalities of their drug trafficking activities at their residences. Therefore, I believe that evidence of SCOTT's drug trafficking activities will be found at 4560 Wayne Meadows Circle.

## ITEMS COMMON TO SEARCH/SEIZE

32. Based upon my training and experience, the training and experience of other law enforcement officers and the facts contained herein, I know materials searched for and recovered in locations involved in drug investigations have included various controlled substances, including, but not limited to: cocaine; drug paraphernalia such as scales, papers and drug packaging materials; books and records reflecting sales, the transfer or transportation of drugs and amounts of monies owed for drugs; records reflecting the names, addresses, and telephone numbers of co-conspirators; sales receipts and other records reflecting the expenditure of monies that are the

**Affidavit of Special Agent Tyler Field** **Page 10**

proceeds from unlawful drug distribution; currency and money wrappers; records of transactions to conceal and launder drug trafficking proceeds; and various valuable assets purchased with the proceeds of unlawful drug trafficking. These items, obtained by search warrants, constituted evidence of Federal drug violations.

33. Based upon my training and experience, my participation in this investigation, and other drug trafficking investigations, I have reason to believe that:

    a. drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies;

    b. drug traffickers often place assets in names of business/corporate entities as nominee title holders in order to avoid detection of these assets by government and law enforcement agencies; even though these assets are placed in the names of other persons or entities, the drug traffickers continue to use these assets and exercise dominion and control over them;

    c. drug traffickers must maintain and/or have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business;

    d. drug traffickers often maintain money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry drug proceeds and/or controlled substances;

    e. drug traffickers often maintain in their residences and/or business establishments records relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed including some or all of the following written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers (i.e. bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt,

concealment, transfer, or movement of money generated from the illegal sale of drugs);

f. drug traffickers commonly use cellular phones to communicate with other members of the DTO, narcotics source of supply(s), and/or narcotics customers in furtherance of violations of the Uniform Controlled Substances Act;

g. drug traffickers commonly provide illegal narcotics to their organization on consignment sale to their customers, who subsequently pay for the drugs after reselling said drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses for their ready access for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

h. drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their business vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

i. drug traffickers commonly will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts), and evidence of this includes documents like stock certificates, bonds, deposit certificates, and travelers checks;

j. drug traffickers often have photographs or video movies of themselves, their co-conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug traffickers possession, their residence and/or their place of business;

k. drug traffickers' methods of transporting drugs include but are not limited to: commercial airlines, private motor vehicles, and government and contract mail carriers. I know that the vehicles, residences, or business locations of drug

traffickers will often contain records of drug-related travel. These records may include airline ticket receipts, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations rental car receipts and luggage tags reflecting points of travel;

l. drug traffickers commonly have firearms in their possession (on their person, at their residence, and/or their business) including but not limited to handguns, rifles, shotguns and automatic weapons. These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property or manufacturing operation;

m. it is common for drug traffickers to secrete in their vehicles items identified in the above paragraphs;

n. drug traffickers will often accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs;

o. drug traffickers commonly will maintain residence(s) separate from their primary residence to serve as "safe houses" where the traffickers may stay for periods of time; I know that these residences which may be occupied by other conspirators or associates may contain elements of the traffickers drug crimes to include all items noted above;

p. drug traffickers commonly have evidence of purchases of goods used in the manufacture of controlled substances secreted in their residences, businesses, or vehicles; and

q. drug traffickers commonly secret in their residences and/or places of business, over a period of years, items such as those identified in the above paragraphs.

## CONCLUSION

34. I believe the facts contained within this affidavit support probable cause to believe that SCOTT and others are involved in distributing controlled substances. Based on my training,

**Affidavit of Special Agent Tyler Field**                                                                 **Page 13**

experience, discussions with other law enforcement officers/agents, and the information contained herein, I believe that probable causes exists that the items listed in Attachment B as evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute, and distribute cocaine, will be found at the locations identified in **Attachment A**.

35. Assistant United States Attorney Ashley Brucato has reviewed this affidavit and the associated application and warrants and as in her opinion they are legally and factually sufficient, I respectfully ask the Court to authorize the requested search warrants.

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this  29  day of June 2020.

_____
HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE